UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEANNE SUE SMITH,

       Plaintiff,                           Civil Action No. 10-14770

v.                                  HON. BERNARD A. FRIEDMAN
                                      U.S. District Judge
                                      HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Leanne Sue Smith brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on January 31, 2006, alleging disability beginning on March 1, 1994 (Tr. 14, 69). After an initial denial, Plaintiff requested an administrative hearing, held on June 11, 2008 in Oak Park, Michigan before Administrative Law Judge (ALJ) Larry

Meuwissen (Tr. 296).  Plaintiff, represented by Timothy Doyle, testified (Tr. 299-306).  On

September 2, 2008, ALJ  Meuwissen found that from March 1, 1994 to Plaintiff's last date

insured ("DLI") of September 30, 1998, she was not disabled (Tr. 22).  On September 29,

2010, the Appeals Council denied review (Tr. 7-13).  Plaintiff filed for judicial review of the

final decision on December 1, 2010.

## BACKGROUND FACTS

Plaintiff,  born January 5, 1954, was 44 on the DLI of September 30, 1998 (Tr. 69).

She completed 12th grade and worked previously as a dental receptionist (Tr. 110, 116).  She

alleges disability as a result of a stroke and Sneddon's syndrome[1] (Tr. 109).

### A.    Plaintiff's Testimony

Plaintiff began her testimony by stating that she stood "five foot something" and

weighed 180 pounds (Tr. 300).  Plaintiff reported that she was terminated from her last job

in 1994 because she was unable to concentrate well enough to file documents (Tr. 301).  She

reported that in 1996, she was hospitalized for two days after collapsing at home (Tr. 301).

Acknowledging that she was diagnosed in 1996 with a "transient, systemic attack," she

alleged that she continued to have such episodes frequently, but no longer sought emergency

treatment (Tr. 301).  Plaintiff, a diabetic, admitted that she had been previously non-

---

[1]

Sneddon's syndrome is a rare progressive disorder affecting the blood vessels,
creating the possible symptoms of "headache, **dizziness, abnormally high blood
pressure (hypertension), heart disease, mini-strokes, and/or stroke[,] . . .  reduced
mental capacity, [and] memory loss."
http://www.webmd.com/a-to-z-guides/sneddon-syndrome.**

compliant with medicine and dietary recommendations, but stated that she now took her medication regularly (Tr. 302). She also alleged that she experienced hip pain (Tr. 303). Plaintiff alleged that anxiety prevented her from leaving the house on a regular basis (Tr. 303). She ended her testimony by stating that she currently treated with a psychiatrist for depression (Tr. 305-306).

### B.    Medical Evidence[2]

### 1. Treating Sources

In February, 1996, Plaintiff sought emergency treatment after losing consciousness (Tr. 132). She reported left side numbness and speech problems prior to the fainting spell (Tr. 132). The imaging studies performed were essentially normal, but Plaintiff declined a spinal tap (Tr. 132, 136-142). She was diagnosed with "transient neurologic symptoms" and "possible multiple sclerosis" (Tr. 132, 135-136).   In March, 1997  Berj Nercessian, M.D. noted during a physical examination that Plaintiff was "awake, alert, and oriented times 3" (Tr. 278). In June, 1997, M.Ammar Hatahet, M.D. noted that Plaintiff reported fatigue but denied chest pains (Tr. 258). The following month, Plaintiff was advised to take over-the-counter Tylenol for mild hip pain (Tr. 256, 272). Dr. Hatahet noted that Plaintiff was non-compliant with diabetic guidelines (Tr. 256). September, 1997 treating notes indicate that Plaintiff's condition was stable (Tr. 253, 269).

In January, 1998, Dr. Hatahet referred Plaintiff for counseling for depression (Tr. 251,

---

[2]Medical records post-dating the DLI of September 30, 1998 are not relevant to the current application for benefits but are summarized here for background purposes.

267).  In June, 1998, Plaintiff reported occasional headaches but denied back pain (Tr. 246).

She appeared in no acute distress (Tr. 246).  In August, 1998, Plaintiff reported anxiety but

appeared in no acute distress (Tr. 245, 261).  In November, 1998, Plaintiff indicated that she

felt "very well overall" (Tr. 244).

　　　　In July, 1999, Plaintiff underwent a cardiac evaluation (Tr. 240-241).  Plaintiff

exhibited a normal mood with anxiety and impaired memory (Tr. 241).  In October, 1999,

imaging studies of the chest were negative for abnormalities (Tr. 146).  In August, 2000, a

CT scan of the brain showed  "evidence of moderate brain atrophy" but was otherwise within

normal limits (Tr. 143).  In November, 2003, Plaintiff was admitted to the hospital for

abnormal uterine bleeding (Tr. 148-173).  Treating sources noted a diagnosis of Sneddon's

syndrome, asthma, diabetes, hyperlipidemia, and aortic insufficiency (Tr. 149).   She

exhibited facial drooping and "abnormal finger-to-nose movement" (Tr. 149).  Psychiatric

consultation notes state that Plaintiff did not show signs of anxiety or depression (Tr. 151).

Plaintiff was discharged after receiving a blood transfusion (Tr. 150).

　　　　In March, 2004, Plaintiff again sought emergency treatment for a transient ischemic

attack ("TIA") (Tr. 175).  She also reported headaches (Tr. 175).  Treating personnel advised

Plaintiff to stop smoking and follow dietary guidelines for diabetes (Tr. 176).  An EEG and

CT of the brain were normal (Tr. 175, 186).   Imaging studies of the chest were also

unremarkable (Tr. 187).

　　　　In February, 2008, Dr. Hatahet composed a letter on behalf of Plaintiff's claim for

benefits, stating that Plaintiff had been diagnosed with Sneddon's syndrome in 1997 (Tr.

-4-

232).  Dr. Hatahet noted that since seeing Plaintiff in 1998, "her neurological status has gotten worse," stating that she exhibited "features of early dementia" and "significant ataxia" (Tr. 232).  His consultation notes from February, 2008 state that Plaintiff was being treating for depression and hypothyroidism (Tr. 233, 242-243).  The following month, Dr. Nercessian also composed a letter on Plaintiff's behalf, stating that he first treated in March, 1997 and as of May, 1997, had noted left side extremity weakness (Tr. 234, 259).  He stated that Plaintiff's cognitive function and muscular strength had "progressively deteriorated" since (Tr. 234).

In May, 2008, physician's assistant Jim Gilson opined that Plaintiff was disabled due to chronic low back pain (Tr. 260).   In June, 2008, Dr. Nercessian completed a medical source statement, finding that as of September 30, 1998, Plaintiff was unable to perform any lifting, carrying, balancing, stooping, kneeling crouching, or crawling (Tr. 282).  He found further that Plaintiff's vision and hearing were both impaired, noting that Plaintiff had recently experienced a stroke (Tr. 282).  In August, 2008, Dr. Hatahet filled out the same form, finding that as of September 30, 1998, Plaintiff was unable to perform any lifting or carrying, or to stand or walk for more than 15 minutes in an eight-hour workday (Tr. 288).  Plaintiff was precluded from all reaching overhead, handling, fingering, pushing, pulling, or use of foot controls as a result of a "sudden onset of loss of strength" (Tr. 289).   He found that Plaintiff had experienced such limitations as of June, 1997 (Tr. 292).

## 2.  Non-Examining Sources

In July, 2005, a Physical Residual Functional Capacity Assessment performed on

behalf of the SSA found that for the period between March 1, 1994 and September 30, 1998, Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; walking, standing, or sitting for up to six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 195). She was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 196). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 197-198). A Psychiatric Review Technique performed the same month found the absence of psychological limitation from the alleged onset day to the present (Tr. 203, 218).

### 3.  Material Submitted  to the Appeals Council

Subsequent to the September 2, 2008 administrative decision, Dr. Hatahet composed a second letter on Plaintiff's behalf, stating that Plaintiff "was intermittently incapacitated" from all work in 1997 and 1998 (Tr. 295).

### C.      The ALJ's Decision

ALJ  Meuwissen found that through the DLI of September 30, 1998, Plaintiff experienced the severe impairments of Sneddon's syndrome, diabetes mellitus, congestive heart failure, and headaches, but that none of the conditions met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Tr. 16, 18). He found that Plaintiff retained the residual functional capacity ("RFC") for a full range of sedentary, unskilled work (Tr. 19).

The ALJ found that Plaintiff's allegations of disability for the period in question were not entirely credible, citing her April, 1997 acknowledgment that her energy level had

improved and treatment notes stating that her condition was stable (Tr. 19). He noted that in August, 2008, Plaintiff had stopped taking her medications without experiencing functional limitations (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

-7-

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[3]

---

[3]As noted above, on October 24, 2008, Dr. Hatahet composed a second letter on Plaintiff's behalf, stating that Plaintiff "was intermittently incapacitated" from all work in 1997 and 1998 (Tr. 295). Plaintiff cites this letter in support of his contention that the ALJ's treating physician was flawed. *Plaintiff's Brief* at 6.

The letter, submitted over a month after the administrative decision, cannot be considered in determining whether Plaintiff is entitled to benefits. Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of

### A.  The Treating Physician Analysis

Plaintiff argues that the ALJ erred by giving no weight to either Dr. Hatahet or Dr. Nercessian's opinion.  *Plaintiff's Brief* at 5-8.  Citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004), she argues that the failure to credit the opinion of either treating physician amounts to reversible error.  *Id.* at 6.  She contends that erroneous treating physician findings also invalidate the ALJ's credibility determination.  *Id.* at 6-7.

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight."  *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)).  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see*

_____

Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding* ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

First, Plaintiff does not request a Sentence Six remand.  Second, she has not provided good cause for its late submission and in fact, it appears that it was improperly submitted as a rebuttal to the ALJ's rejection of treating physicians' opinions.  "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky.2009)(citing *Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)).

*Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2)[4].

First, the ALJ's rejection of Drs. Hatahet's and Dr. Nercessian's findings was well explained. The ALJ noted that Dr. Hatahet's February, 2008 assessment did not provide "any new evidence regarding the claimant's condition prior to the expiration of her insured status," noting that the assessment "primarily addresses her condition now, after the expiration of her insured status" (Tr. 20). The ALJ observed that Dr. Hatahet acknowledged that as of February, 2008, he had not seen the claimant for 10 years (Tr. 20) and indeed, the physician's letter accompanying the assessment stresses that Plaintiff's condition deteriorated notably *since* her last treatment in 1998. It does not support the conclusion that she was disabled *before* September 30, 1998 (Tr. 232). For identical reasons, the ALJ rejected Dr. Nercessian's findings by noting that they referred to Plaintiff's worsening condition subsequent to the DLI (Tr. 20). In addition to discussing his reasons for rejecting these physicians' 2008 assessments, the ALJ devoted a two-page discussion to their treating records for the relevant period (Tr. 16-18).

Second, the rejection of Drs. Hatahet and Nercessian's opinions is amply supported

---

[4]

In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

by the record.   For example, Dr. Hatahet's 2008 finding that Plaintiff was incapable of *all* lifting and carrying is contradicted by his own treating notes indicating that Plaintiff's July, 1997 acknowledgment that she continued to garden (Tr. 256).   Dr. Hatahet's January, 1998 treating state that Plaintiff was able to travel to Florida for a week, if not dispositive of her condition, also supports the conclusion that she did not become disabled prior to October 1, 1998 (Tr. 251).

Likewise, Dr.  Nercessian's June, 2008 assessment, including a finding that Plaintiff experienced severe cognitive problems and vision limitations, is belied by his own treating records, including his March, 1997 observations that she had normal vision and her "memory seemed good" (Tr. 278).  His June, 2008 finding that Plaintiff was unable to walk for more than minutes at a time is directly contradicted by his own April, 1997 treating records which state that Plaintiff had "been walking in the mall at least for 4-5 hours now" (Tr. 276). Plaintiff's overlapping argument that the interpretation of treating records tainted the credibility determination is also without merit.  Because the treating physician analysis is procedurally and substantively sound, the administrative findings should remain undisturbed.

## B.  Plaintiff's Request for Supplemental Security Income

In addition to requesting earnings-based DIB benefits, Plaintiff asks that she be awarded Supplemental Security Income ("SSI").   *Plaintiff's Brief* at 9. Plaintiff's qualification for DIB benefits, based on her prior earnings, is premised on establishing disability before September 30, 1998.  In contrast, Plaintiff faces no such deadline for

obtaining SSI benefits, provided that she can show disability and financial need.  *Willis v. Sullivan,* 931 F.2d 390, 392, fn 1 (6th Cir. 1991); 42 U.S.C. § 1382.

Unfortunately, the transcript shows that Plaintiff has not applied for SSI benefits. Because Plaintiff has not exhausted her administrative remedies as required by 42 U.S.C. 405(g) this Court cannot consider her request for an award of SSI benefits.  *See Smith v. Commissioner of Social Sec.* 2010 WL 5464889, *3  (S.D.Ohio2010)(citing 20 C.F.R. § 416.1400(a)(5))(dismissing unexhausted SSI claim under § 405(g) brought by claimant also bringing a properly exhausted DIB claim).  Although the ALJ's finding of non-disability before October 1, 1998 was amply supported by the record, it should be noted that Plaintiff is not precluded for applying for SSI benefits based on the later deterioration of her condition.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue

contained within the objections.

                              s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

Dated:  September 23, 2011

                         CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 23, 2011.

                              s/Susan Jefferson

                                  -13-

Deputy Clerk